IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF MARY JEAN GRILLO,          *
by Anthony Grillo, Personal
Representative of the Estate of Mary     *
Jean Grillo, et al.,
                                         *
          Plaintiffs,
                                         *
v.                                              Civil Action No. GLR-21-3132
                                         *
TRAMAINE MARKEE THOMPSON,
et al.,                                  *

          Defendants.                    *

                           ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants P&S Transportation, LLC and Tramaine Markee Thompson's Motion to Dismiss (ECF No. 13). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons discussed below, the Court will grant the Motion, which the Court construes as a motion for summary judgment.

## I.      BACKGROUND

### A.    Factual Background

Plaintiffs in this case are the Estate of Mary Jean Grillo ("Grillo"), her husband Anthony Grillo, Individually and as Personal Representative of the Estate of Mary Jean

---

[1] The Court recognizes that Defendants have requested a hearing on the Motion. (See Mot. Dismiss at 3, ECF No. 13). Having determined that no hearing is necessary to understand the issues underlying the Motion, the Court will deny the request.

Grillo, and Grillo's children, Monica Anne Grillo, Jeanne Marie Grillo, Anne Marie Grillo, and John Grillo. (Compl. at 1, ¶ 4, ECF No. 1-4). On the afternoon of February 4, 2019, Grillo was driving her 2005 Honda Element eastbound on Annapolis Road in Anne Arundel County, Maryland. (Id. ¶¶ 7, 9). Grillo was stopped at a red light at the intersection of Annapolis Road and Route 301. (Id. ¶ 9). At that same time, Defendant Tremaine Markee Thompson, in his capacity as an employee of Defendant P&S Transportation, LLC ("P&S"), was traveling on Route 301 in a 2013 Freightliner tractor pulling a loaded forty-eight-foot flatbed trailer. (Id. ¶¶ 9, 10). As Thompson "approached the intersection on a yellow signal," Grillo "inadvertently entered the intersection." (Id. ¶ 9). Thompson struck Grillo's vehicle in his tractor-trailer and caused her death (the "Crash"). (Id. ¶ 12).

As he traveled the 8,766 feet prior to the Crash, Thompson was moving somewhere between 59.5 and 66.5 miles per hour ("mph"), in excess of the fifty-mph speed limit. (Id. ¶ 11; Forensic Crash Reconstruction Report ["ATI Report"] at 2, ECF No. 17-1).[2] Plaintiffs posit that if Thompson had been travelling "at the posted speed limit" over the course of this distance prior to the Crash, "the truck would have been 1,802 feet from the crash location when Ms. Grillo entered the intersection." (Id. ¶ 12). As a result, Plaintiffs allege,

---

[2] Rather than filing the exhibits to their Opposition as separate attachments, Plaintiffs appended the exhibits to their Opposition to the end of the Opposition. Thus, the electronic document accessible at ECF No. 17-1 contains the Opposition and several exhibits thereto. The Forensic Crash Reconstruction Report prepared by Accident Technology, Inc., may be found at pp. 30–33 of ECF No. 17-1. References to exhibit page ranges refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

"[n]ot only would the crash not have occurred, but Mr. Thompson would not have been in a position to even see [Grillo's] Honda at the intersection." (Id.).

The official police report of the Crash (the "Police Report") stated that Grillo's vehicle "started pulling into the intersection against the red signal as [Thompson's vehicle] was entering the intersection on the yellow signal." (Anne Arundel Cnty. Police Report ["Police Report"] at 3, ECF No. 13-5). A driver behind Thompson's vehicle stated that "had a yellow light and he made it with time to spare." (Id. at 16). Video footage from Thompson's vehicle shows that Grillo's vehicle did not enter the intersection until, at the earliest, 1.75 seconds before the Crash. (Id. at 18–23). An eyewitness described herself as "shocked" that Grillo entered the intersection because they "had been sitting there for a minute" before Grillo's vehicle "just slowly went through the red light." (Id. at 15). The Anne Arundel County Police Department determined that Thompson's vehicle was traveling "as much [as] 15 mph over the posted 50 mph speed limit approximately 22 seconds prior to the collision." (Id. at 36). The police nevertheless found that the "primary cause" of the Crash was Grillo's failure to obey the traffic signal. (Id. at 35).

Plaintiffs include with their Opposition several exhibits relating to Grillo's health in the weeks leading up to the Crash. For example, Plaintiffs provide a January 28, 2019 report from Grillo's primary care physician reflecting that she "ha[d] been struggling now with palpitations for the last 4-6 weeks." (M. Skinner Report at 1, ECF No. 17-1).[3] Grillo's physician suspected that Grillo's blood pressure was "not very well controlled." (Id.).

---

[3] The January 28, 2019 physician's report may be found at pp. 20–22 of ECF No. 17-1.

Grillo was equipped with a body guardian heart monitor at the time of the visit. (Autopsy Report at 1, ECF No. 17-1).[4] The Autopsy Report, however, suggests that Grillo's cardiovascular system was in good condition at the time of the Crash. (Id. at 2–3).

## B.   Procedural History

Plaintiffs filed their Complaint with the Circuit Court for Anne Arundel County, Maryland, on August 19, 2021. (ECF No. 1-4). Defendants removed the case to this Court on December 8, 2021. (ECF No. 1).

Plaintiffs' seven-count Complaint alleges: wrongful death (Count I); survival action (Count II); negligence (Count III); respondeat superior (Count IV); negligent entrustment (Count V); negligent hiring and retention (Count VI); and punitive damages (Count VII). (Compl. ¶¶ 16–63). The Complaint seeks five million dollars in economic and non-economic damages, compensatory damages, punitive damages, costs, and pre- and post-judgment interest. (Id. at 15–16).

On December 21, 2021, Defendants filed the instant Motion to Dismiss (ECF No. 13). Plaintiffs filed an Opposition on February 4, 2022, (ECF No. 17), and on February 17, 2022, Defendants filed a Reply (ECF No. 20).[5]

---

[4] The Autopsy Report may be found at pp. 24–27 of ECF No. 17-1.

[5] On March 3, 2022, Plaintiffs filed a Motion for Leave to File Surreply (ECF No. 28) along with a proposed Surreply (ECF No. 28-1). Although a district court has discretion to allow a surreply, see Local Rule 105.2(a) (D.Md. 2021), surreplies are generally disfavored in this District. Chubb & Son v. C & C Complete Servs., LLC, 919 F.Supp.2d 666, 679 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Here, the subject of the proposed Surreply—whether Plaintiffs served Defendants with discovery requests prior to removal—does not bear on the Court's

## II.      DISCUSSION

**A.      <u>Standard of Review</u>**

**1.      Conversion**

Defendants request in the first paragraph of their Motion "that the Court convert their motion to dismiss into a motion for summary judgment and grant summary judgment in Defendants' favor on all counts." (Mem. Supp. Mot. Dismiss ["Mot."] at 1, ECF No. 13-1). "A motion styled in this manner implicates the Court's discretion under Rule 12(d)[.]" <u>Pevia v. Hogan</u>, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the

_____

resolution of this Motion for reasons explained <u>infra</u> in Section II.A.1. Accordingly, the Court will deny the Motion for Leave to File Surreply.

movant states in the first paragraph of its motion that it seeks to convert the motion to one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Davidson v. Md. Parole Comm'n, No. JFM-13-250, 2013 WL 1830097, at *1 (D.Md. Apr. 30, 2013). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To satisfactorily raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Est. of Ingle v. Yelton, 439 F.3d 191, 195 (4th

Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Here, both requirements for conversion are satisfied, and the Court will not excuse Plaintiffs' failure to file a Rule 56(d) affidavit. Defendants stated in the first paragraph of their Motion that they sought to convert it to a motion for summary judgment. See Davidson, 2013 WL 1830097, at *1. Thus, Plaintiffs were on notice that the Court might resolve Defendants' Motion under Rule 56. While Plaintiffs filed an Opposition, they did not include a Rule 56(d) affidavit. Rather, Plaintiffs, in conclusory fashion, describe the motion for summary judgment as "[p]remature" and request that the Court "allow plaintiff

the opportunity to engage in discovery and try her case on the merits." (Mem. Supp. Pl.'s Obj. Defs.' Mot. Dismiss ["Opp'n"] at 14–15, ECF No. 17-1). Plaintiffs reference unanswered discovery requests, (id. at 15), but do not describe what evidence those requests sought or why that evidence would create a genuine dispute of material fact. Plaintiffs' request, without more, does not "put the district court on notice of the reasons why summary judgment [is] premature." See Harrods, 302 F.3d at 245; see also id. at 244 ("[A] reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit." (quoting Evans, 80 F.3d at 961)). The Court will therefore treat the Motion as one for summary judgment.

**2.    Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be

made on personal knowledge" and "set out facts that would be admissible in evidence,"

Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden

shifts to the nonmovant to identify evidence showing there is a genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140

(4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson,

477 U.S. at 248; see also JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d

459, 465 (4th Cir. 2001) ("The existence of an alleged factual dispute between the parties

will not defeat a properly supported motion for summary judgment, unless the disputed

fact is one that might affect the outcome of the litigation."). Whether a fact is considered

to be "material" is determined by the substantive law. Hooven-Lewis v. Caldera, 249 F.3d

259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the

evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's

favor. Anderson, 477 U.S. at 248. If the nonmovant fails to make a sufficient showing on

an essential element of his case where he has the burden of proof, "there can be 'no genuine

[dispute] as to any material fact,' since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(c)).

**B.**   <u>**Analysis**</u>

**1.**   **Negligence and Related Claims (Counts I–III)**

Defendants argue that Plaintiffs' negligence, survivor action, and wrongful death claims must fail because Grillo was contributorily negligent to the Crash. At bottom, the Court agrees and will dismiss Counts I–III on this basis.

Maryland recognizes the doctrine of contributory negligence. <u>See</u> <u>Kiriakos v. Phillips</u>, 139 A.3d 1006, 1026 n.38 (Md. 2016). "[C]ontributory negligence bars a plaintiff's recovery" for negligence when the injury that the defendant caused "is also a result of the plaintiff's own failure to exercise due care." <u>Id.</u> Critically, "a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, <u>regardless of the quantum of a defendant's primary negligence</u>." <u>Harrison v. Montgomery Cnty. Bd. of Educ.</u>, 456 A.2d 894, 898 (Md. 1983) (emphasis added). "That is to say, even if the plaintiff is determined to be only one percent negligent in an accident and the defendant ninety-nine percent negligent, the plaintiff is still denied recovery." <u>Meyers v. Lamer</u>, 743 F.3d 908, 914 (4th Cir. 2014).

On the face of the Complaint, it appears beyond dispute that Grillo was contributorily negligent: in the moments immediately prior to the Crash, she entered the intersection against a red light in violation of Maryland Traffic Code. <u>See</u> Md. Code Ann., Transp. § 21-202(h); <u>Ford v. Bradford</u>, 132 A.2d 488, 491–92 (Md. 1957) ("[T]he violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence."); <u>see also</u> <u>Duncan v. United States</u>, No. L-10-2097, 2011 WL 2746291, at *1, *3 (D.Md. July 11, 2011)

(granting summary judgment in favor of the defendant upon finding that the plaintiff was contributorily negligent as a matter of law in failing to keep a proper lookout in entering an intersection). Thus, on the face of the Complaint and the documentary evidence before the Court, there appears to be no genuine dispute as to whether Grillo was at least one percent responsible for the Crash.

In their Opposition, Plaintiffs rely on three arguments to contest Defendants' argument that Grillo was contributorily negligent: (1) Grillo may have suffered a medical event that caused her to lose consciousness prior to the Crash and, therefore, she was not contributorily negligent, (Opp'n at 6–9); (2) Defendants may not rely on a contributory negligence defense because Thompson was grossly negligent, (id. at 9–13); and (3) contributory negligence is not a bar to Plaintiffs' claims because Thompson had or should have had a "last clear chance" to avoid the Crash, (id. at 13–14). The Court will address each argument in turn.

First, Plaintiffs argue that the evidence they attach to their Opposition indicating that Grillo had certain preexisting health conditions suggests that she may have fainted prior to the Crash. Plaintiffs cite Moore v. Presnell, 379 A.2d 1246 (Md.Ct.Spec.App. 1977), for the "defense of unanticipated unconsciousness," i.e., the idea that "where the driver of a motor vehicle suddenly and unforeseeably becomes physically or mentally incapacitated, he is not liable for injury resulting from the operation of the vehicle while so incapacitated." Id. at 1248–49.

The issue with Plaintiffs' unanticipated unconsciousness defense is that a party opposing summary judgment must identify a genuine dispute as to a material fact. The idea

that Grillo may have suffered some medical event that caused her to lose consciousness—a theory, incidentally, entirely absent from the Complaint—is, at best, conjecture. <u>See Hartford Fire Ins. v. Adcor Indus., Inc.</u>, 158 F.App'x 430, 432 (4th Cir. 2005) ("[S]peculative inferences and conclusory assertions are not enough to create a genuine issue of material fact."); <u>Othentec Ltd.</u>, 526 F.3d at 140 (holding that the nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another" (quoting <u>Beale</u>, 769 F.2d at 214)). It is a post-hoc rationalization for what may have caused Grillo's vehicle to enter the intersection and, to be sure, it is theoretically possible. But a party cannot create a genuine dispute of material fact by imagining a set of circumstances under which a decedent was not contributorily negligent. And there is no actual evidence here to support that Grillo lost consciousness. For example, Plaintiffs have introduced no evidence that Grillo lost consciousness in the weeks or months leading up to the Crash, or that any eyewitnesses to the Crash saw her head or body slump prior to the Crash. Indeed, it appears from the Autopsy Report that Grillo's cardiovascular system was in good condition at the time of the Crash. (<u>See</u> Autopsy Report at 2–3). A single physician's report referencing heart palpitations, without more, is insufficient to create a genuine dispute of fact as to whether Grillo passed out before the Crash.

Further, Plaintiffs' argument that Grillo's loss of consciousness may have been caused by medication she was taking—another idea introduced for the first time in Plaintiffs' Opposition—is similarly unsupported by any specific reference to those medications and their possible side effects. Plaintiffs' reliance on eyewitness testimony

that Grillo's vehicle had stopped prior to entering the intersection to support the position that Grillo had lost consciousness is also speculative. In sum, Plaintiffs ask the Court to make the inference that Grillo lost consciousness because she may have had a heart condition of some kind, she was taking blood pressure medication, and she entered the intersection after stopping her car. The Court cannot make such a speculative logical leap without supporting evidence when evaluating a motion under Rule 56.

Finally, the Court notes that if Grillo knowingly operated her vehicle with a medical condition that created the potential for her to lose consciousness, that would bar her unanticipated unconsciousness defense. See Moore, 379 A.2d at 1248 n.4 ("If the driver of the vehicle knew that he was subject to attacks in the course of which he was likely to lose consciousness, and an accident occurs because of the fact that the driver suffered a fainting spell, such loss of consciousness does not constitute a defense . . . ." (quoting 28 A.L.R.2d 12 § 3(2) (1953))). For all these reasons, the Court finds that Plaintiffs' speculation that Grillo may have lost consciousness prior to the Crash is insufficient to create a genuine issue of material fact as to her contributory negligence.

Plaintiffs next argue that Defendants cannot rely on a defense of contributory negligence because Plaintiffs have introduced evidence showing that Thompson was grossly negligent. Plaintiffs rely on a host of cases outside of the state of Maryland to support the position that gross negligence precludes a defense of contributory negligence. (See Opp'n at 11–12). These cases, however, do not reflect Maryland law. As the Fourth Circuit has explained:

> Maryland never has held that contributory negligence does not bar gross negligence. To the contrary, many cases have suggested just the opposite in dicta. <u>See, e.g.</u>, <u>Harrison v. Montgomery County Bd. of Educ.</u>, 295 Md. 442, 451, 456 A.2d 894, 898 (1983) (observing that it is "the well-established law of this State that a plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence"); <u>Stancill v. Potomac Elec. Power Co.</u>, 744 F.2d 861, 865 n. 21 (D.C.Cir.1984) (noting that "[n]either party, however, has directed us to any Maryland case expressly so holding, and our own review of Maryland caselaw might lead us to the conclusion that contributory negligence defeats claims based upon gross negligence, as well as those based upon simple negligence"); <u>Ladnier v. Murray</u>, 572 F.Supp. 544, 547 (D.Md.1983) (applying Maryland law to the effect that "contributory negligence is an absolute bar to recovery in a negligence case"), <u>rev'd in part, vacated in part, on other grounds</u>, 769 F.2d 195 (4th Cir.1985).

<u>Ramos v. S. Md. Elec. Co-op., Inc.</u>, 996 F.2d 52, 54–55 (4th Cir. 1993); <u>see also</u> <u>Est. of Saylor v. Regal Cinemas, Inc.</u>, No. WMN-13-3089, 2016 WL 4721254, at *14 n.10 (D.Md. Sept. 9, 2016) ("[T]he question as to whether contributory negligence can be a bar to a gross negligence claim is an unsettled question under Maryland law."), <u>aff'd sub nom.</u>, <u>Est. of Saylor v. Rochford</u>, 698 F.App'x 72 (4th Cir. 2017); <u>Rockwell v. Rawlins</u>, No. RDB-13-3049, 2014 WL 5426716, at *5 (D.Md. Oct. 23, 2014) ("[T]here is no definitive Maryland case law explaining the relationship between gross negligence and contributory negligence, and it appears that the United States Court of Appeals for the Fourth Circuit has determined that the Maryland would reject the Restatement's rule.").

The Court is unaware of any Maryland decision post-dating <u>Ramos</u> in which an appellate court has held that gross negligence on the part of a defendant precludes a defense of contributory negligence. Thus, as this Court held in <u>Rockwell</u>, "[i]n light of the death of

14

any more recent guidance from Maryland courts, this Court is compelled to follow the Fourth Circuit's construction of Maryland law." 2014 WL 5426716, at *5. As a result, the Court need not consider whether Thompson was grossly negligent, because even if Plaintiffs were able to establish such gross negligence, it would not obviate Grillo's own contributory negligence under Maryland law.

Finally, Plaintiffs argue that notwithstanding Grillo's contributory negligence, Thompson remains liable under the "last clear chance" doctrine. In Maryland, the "last clear chance" doctrine "allows a contributorily negligent plaintiff to recover damages from a negligent defendant when 'the plaintiff makes a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence.'" Saravia v. De Yue Chen, 527 F.App'x 254, 256 (4th Cir. 2013) (quoting Wooldridge v. Price, 966 A.2d 955, 961 (Md.Ct.Spec.App. 2009)). "But '[w]here the negligence of the plaintiff and defendant are concurrent in time or where the lack of a fresh opportunity is caused by the defendant's preexisting negligence, the defendant has no last clear chance,' and the doctrine is inapplicable." Id. (quoting Kassama v. Magat, 792 A.2d 1102, 1114 n.12 (Md. 2002)).

According to Plaintiffs, the Forensic Crash Reconstruction Report prepared by Accident Technology, Inc., established that Thompson was 8,766 feet from the Crash location one minute and forty-four seconds prior to the Crash and traveling at an unlawful speed for the period leading up to the Crash. (ATI Report at 2). Plaintiffs argue that had Thompson been traveling at a legal speed for those 104 seconds, he would have been far enough away from Grillo at the time of the Crash that he would have had a "last clear

chance" to avoid the Crash. (Opp'n at 14). But this argument and these facts are almost the precise opposite of what is required to establish a "last clear chance" argument. Plaintiffs do not argue that Thompson encountered "something new or sequential, which afford[ed] [Thompson] a fresh opportunity (of which he fail[ed] to avail himself) to avert the consequences of his original negligence." <u>Saravia</u>, 527 F.App'x at 256 (quoting <u>Wooldridge</u>, 966 A.2d at 961). Rather, Plaintiffs argue that if Thompson had been going slower earlier, he would then have had a "last clear chance" to avoid the Crash. In other words, Plaintiffs argue that "the lack of a fresh opportunity [was] caused by the defendant's preexisting negligence." <u>Id.</u> (quoting <u>Kassama</u>, 792 A.2d at 1114 n.12). This is precisely the sort of situation in which the Fourth Circuit and the Maryland Court of Appeals found that the last clear chance doctrine does <u>not</u> apply. Accordingly, the Court rejects Plaintiffs' argument that they may proceed despite Grillo's contributory negligence under the last clear chance doctrine.

For all these reasons, the Court finds that Plaintiffs have failed to introduce a genuine dispute of material fact as to whether Grillo's negligence contributed to the Crash. The Court further finds that Maryland courts would likely find that gross negligence is not a bar to a contributory negligence defense. Finally, the Court finds that the last clear chance doctrine is inapplicable here. Contributory negligence is a complete bar to recovery in Maryland for claims rooted in negligence. <u>Harrison</u>, 456 A.2d at 898; <u>see</u> <u>Wooldridge</u>, 966 A.2d at 961 ("In survival actions and wrongful death actions, contributory negligence of the decedent is a bar to recovery against a negligent defendant."). Accordingly, the Court will enter judgment in Defendants' favor on Counts I–III.

### 2. Negligence by P&S (Counts V, VI)

Plaintiffs bring Counts V and VI against P&S for negligent entrustment and negligent hiring and retention. (Compl. ¶¶ 41–60). Defendants "formally admit that Mr. Thompson was driving a truck within the scope of his employment for P&S at the time the accident occurred." (Mot. at 10). When defendants in an automobile tort action admit that there is an agency relationship between the driver alleged to be at fault and his employer, the court may dismiss the plaintiff's negligent entrustment and negligent hiring and retention claims. See Houlihan v. McCall, 78 A.2d 661, 665 (Md. 1951) ("[W]hen agency had been admitted it was quite unnecessary to pursue the alternative theory in order to hold the corporate defendant. It was only necessary to prove negligence on the part of the driver."); see also Brown v. Kahl, No. JMC-18-352, 2018 WL 4108030, at *4 (D.Md. Aug. 29, 2018) ("Because the corporate defendant had already conceded that it was vicariously liable . . . the negligent entrustment claim not only became superfluous, but created a pathway for the potential introduction of unfairly prejudicial evidence against the driver in deciding the issue of his negligence."). Accordingly, the Court will enter judgment in Defendants' favor on Counts V and VI.

### 3. Derivative Counts (Counts IV, VII)

Plaintiffs' remaining claims, Count IV (respondeat superior) and Count VII (punitive damages), are essentially rooted in Plaintiffs' negligence claims, Counts I–III. Because Plaintiffs' negligence claims fail, Counts IV and VII fail. See In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig., 300 F.Supp.3d 732, 736 n.3 (D.Md. 2018) ("A claim for punitive damages is derivative and

therefore survives if the plaintiffs' underlying claims that support it survive."); Cap. Lighting & Supply, LLC v. Wirtz, No. JKB-17-3765, 2018 WL 3970469, at *15 (D.Md. Aug. 20, 2018) ("[R]espondeat superior is not a standalone claim but a theory of liability under which an employer can be held liable for the tortious conduct of an employee if the employee was acting within the scope of his employment." (quoting Gibbons v. Bank of Am. Corp., No. JFM-08-3511, 2012 WL 94569, at *5 n.5 (D.Md. Jan. 11, 2012))). Accordingly, the Court will grant Defendants' Motion as to Counts IV and VII.

### III.      CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 13), which it construes as a motion for summary judgment. A separate Order follows. Entered this 1st day of August, 2022.

_____/s/_____
George L. Russell, III
United States District Judge